**<u>Exhibit A</u>**

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALACHUA GOVERNMENT SERVICES, INC., | ) | Case No. 25-11289 (JKS) |
| | ) | |
| Debtor.[1] | ) | **Re: Docket No. __** |
| | ) | |
| | ) | |

**ORDER (I) APPROVING BIDDING PROCEDURES**
**FOR THE SALE OF THE DEBTOR'S ROYALTY ASSETS, (II) AUTHORIZING**
**THE DEBTOR TO DESIGNATE A STALKING HORSE BIDDER AND TO**
**PROVIDE BIDDING PROTECTIONS, (III) SCHEDULING AN AUCTION AND**
**APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING**
**ASSUMPTION AND ASSIGNMENT PROCEDURES, (V) SCHEDULING A SALE**
**HEARING AND APPROVING THE FORM AND MANNER OF NOTICE**
**THEREOF AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the *Motion of the Debtor for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of the Debtor's Royalty Assets, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder and to Provide Bidding Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtor's Royalty Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "**Motion**")[2] of the Debtor; and the Court having reviewed the Motion, the O'Hara Declaration, and the First Day Declaration; and the Court having considered the statements

---

[1]    The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number is: Alachua Government Services, Inc. (5370).  The Debtor's mailing address is 13200 NW Nano Court, Alachua, Florida 32615.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or in the Bidding Procedures, as applicable.

of counsel and the evidence adduced with respect to the Motion at a hearing before the Court on [___], 2025 to consider certain of the relief requested in the Motion (the "**Bidding Procedures Hearing**"); and after due deliberation, this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion at the Bidding Procedures Hearing is in the best interests of the Debtor, its estate, and its creditors, and the Debtor having demonstrated good, sufficient, and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice of the Motion and the Bidding Procedures Hearing was sufficient and no other or further notice need be provided.

D.      The bidding procedures attached hereto as **Exhibit 1** (the "**Bidding Procedures**") are fair, reasonable, and appropriate and are designed to maximize the value of the proceeds of the sale of the Debtor's certain intangible assets that include royalty revenue derive from the Debtor's ownership of certain cell lines used in the development of vaccines by third parties (the "**Royalty Assets**").

E.      The Bidding Procedures comply with the requirements of Rule 6004-1(c) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

2

F.      The procedures set forth herein regarding the Debtor's assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**") in connection with a sale of the Royalty Assets (the "**Assumption and Assignment Procedures**") are fair, reasonable, and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

G.      The Debtor has articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures; (ii) the form and manner of notice of the Bidding Procedures, the auction of the Royalty Assets (the "**Auction**"), and the final hearing to consider approval of a sale of the Royalty Assets (the "**Sale Hearing**"), substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "**Counterparty**") of (a) the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract (the "**Cure Costs**") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with the sale of the Royalty Assets, substantially in the form attached hereto as **Exhibit 3** (the "**Assumption and Assignment Notice**"); and (iv) the Assumption and Assignment Procedures.

H.      The Bidding Procedures, including the procedures for the designation of a Stalking Horse Bidder and providing certain bid protections as provided for in this Order, are reasonably designed to promote active bidding at and participation in the Auction to ensure that the highest or otherwise best value is generated for the Royalty Assets.

I.      Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

J.       The Sale Notice, the Publication Notice (as defined below), and the Assumption

and Assignment Notice are appropriate and reasonably calculated to provide all interested parties

with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the

Assumption and Assignment Procedures, the Debtor's proposed Cure Costs, any proposed

assumption of a Contract in connection with a sale of the Royalty Assets, and all relevant and

important dates and deadlines with respect to the foregoing, and no other or further notice of the

Auction, the sale of the Royalty Assets, or the assumption and assignment of Contracts in

connection therewith shall be required.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.       The Motion is GRANTED to the extent set forth herein.

2.       All objections to the relief granted in this Order that have not been withdrawn,

waived, or settled, and all reservations of rights included therein, are hereby overruled and denied

on the merits with prejudice.

**A.       The Bidding Procedures**

3.       The Bidding Procedures attached hereto as **<u>Exhibit 1</u>** are hereby approved and are

incorporated herein by reference. The Bidding Procedures shall govern the bids and proceedings

related to the Auction and the sale of the Royalty Assets. The Debtor is authorized to take all

actions necessary or appropriate to implement the Bidding Procedures.

4.       Subject to this Order and the Bidding Procedures (including the consultation rights

afforded to the Consultation Parties in the Bidding Procedures), the Debtor, in the exercise of its

reasonable business judgment and in a manner consistent with its fiduciary duties and applicable

law, shall have the right to (a) determine which bidders qualify as "Qualified Bidders," and which

bids qualify as "Qualified Bids;" (b) make final determinations as to whether the Debtor will

conduct an Auction; (c) select the Baseline Bid for the Royalty Assets; (d) determine the amount

of each Minimum Overbid; (e) determine the Leading Bid for the Royalty Assets; (f) determine which Qualified Bid is the highest or otherwise best bid for the Royalty Assets (such Qualified Bid, a "**Successful Bid**") and which Qualified Bid is the next highest and next best bid after the Successful Bid for the Royalty Assets (such Qualified Bid, a "**Backup Bid**"); (g) reject any bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of this Order or any other applicable order of the Court, the Bidding Procedures, the Bankruptcy Code, or other applicable law; or (iii) contrary to the best interests of the Debtor and its estate; (h) adjourn or cancel the Auction in accordance with the Bidding Procedures; and (i) adjourn the Sale Hearing in accordance with the Bidding Procedures.

5.    In accordance with and subject to the Bidding Procedures (including the consultation rights afforded to the Consultation Parties in the Bidding Procedures), the Debtor, in the exercise of its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, shall have the right to modify the Bidding Procedures, including to (a) extend or waive deadlines or other terms and conditions set forth herein or therein; (b) adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders; and (c) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the value of the Royalty Assets.

**B.    Stalking Horse and Bidding Protections**

6.    The Debtor is authorized to seek approval of any Stalking Horse Agreements with any Stalking Horse Bidders and provide such Stalking Horse Bidder(s) with an expense reimbursement of the reasonable and documented third-party fees and expenses incurred by such Stalking Horse Bidder(s) and/or a break-up fee (collectively, the "**Bid Protections**") in accordance with the following procedures (the "**Stalking Horse Designation Procedures**"):

a.  Subject to the provisions set forth in the DIP Orders, the Bidding Procedures, and this Order, in consultation with the Consultation Parties, and with the consent of the DIP Lender (which consent will not be unreasonably withheld, conditioned, or delayed), the Debtor may, after consultation with the Consultation Parties, enter into one or more Stalking Horse Agreements, in form and substance reasonably acceptable to the DIP Lender, subject to higher or otherwise better offers at the Auction.

b.  In the event that the Debtor, in consultation with the Consultation Parties and with the consent of the DIP Lender (which consent will not be unreasonably withheld, conditioned, or delayed), selects one or more parties to serve as Stalking Horse Bidder(s) and to provide such Stalking Horse Bidder(s) with Bid Protections, the Debtor may seek entry of an order approving the designation of the Stalking Horse Bidder and, to the extent applicable, any proposed Bid Protections (a "**Stalking Horse Order**").

c.  To obtain entry of a Stalking Horse Order, the Debtor will be authorized to file a notice (the "**Stalking Horse Hearing Notice**") setting an expedited hearing on not less than five calendar days' notice. Such Stalking Horse Hearing Notice will be served on the U.S. Trustee, the Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Case with no further notice being required (the "**Stalking Horse Notice Parties**").

d.  The Stalking Horse Hearing Notice will (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly-formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iii) identify any connections the Stalking Horse Bidder has to the Debtor other than those connections that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections; (v) attach the Stalking Horse Agreement; (vi) attach the proposed form of Stalking Horse Order; and (vii) and set forth the Stalking Horse Order Objection Deadline (as defined below).

e.  Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "**Stalking Horse Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Stalking Horse Notice Parties no later than three calendar days after the service of the Stalking Horse Notice (the "**Stalking Horse Objection Deadline**"). If no Stalking Horse Objection is timely filed and served with respect to the applicable Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtor may submit to the Court the proposed Stalking Horse Order under certification of counsel, which may be entered by the Court without a hearing, including with respect to any Bid Protections.

6

f.    For the avoidance of doubt, no Stalking Horse Bidder will be entitled to any Bid Protections absent entry of a Stalking Horse Order or further order of the Court. Notwithstanding anything herein to the contrary, to the extent the Debtor seeks to provide Bid Protections to a Stalking Horse Bidder that is either (A) an "insider" as that term is defined in section 101(31) of the Bankruptcy Code or (B) a credit bid by the DIP Lender or the Prepetition Secured Lender, then the Debtor will file a separate motion seeking approval of such Bid Protections and may request that the Court hold a hearing on the approval of such motion on an expedited basis.

7.    Notwithstanding anything to the contrary in this Order, any Stalking Horse Agreement or the Bidding Procedures, (a) payment of any Bid Protections payable to any Stalking Horse pursuant to the terms and conditions of a Stalking Horse Agreement shall be subject to the terms of the DIP Orders and the DIP Documents (as defined in the DIP Orders), and (b) the Bid Protections are entitled only to administrative priority status and not superpriority status.  For the avoidance of doubt, the Debtor shall only be obligated to remit amounts to any Stalking Horse on account of the Bid Protections in accordance with the terms and conditions of this Order and a Stalking Horse Agreement.

**C.    Bid Deadline and Auction**

8.    Any Interested Party that intends to participate in the Auction must submit in writing a Qualified Bid in accordance with the Bidding Procedures on or before **December 19, 2025 at 4:00 p.m. (ET)** (the "**Bid Deadline**").

9.    If the Debtor receives more than one Qualified Bid for the Royalty Assets, the Debtor shall conduct an Auction for the Royalty Assets.

10.    The Auction, if required, shall take place on **January 5, 2026 at 10:00 a.m. (prevailing Eastern time)**, at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, or such later date, time and location as designated by the Debtor (in consultation with the Consultation Parties), after providing notice by email and overnight mail to the following parties: (i) the DIP Lender, (ii) the United States Trustee

7

for the District of Delaware, (iii) the Prepetition Secured Lender, and (iv) counsel to the Committee. The Auction will be conducted openly and all creditors will be permitted to attend (but, unless such creditor is a Qualified Bidder or Consultation Party, not participate in) the Auction, to be evaluated and determined by the Debtor in its reasonable discretion; *provided* that any such creditor that wishes to attend the Auction must provide the Debtor with written notice of their intent to attend the Auction two (2) business days prior to the Auction, which written notice shall be sent to counsel for the Debtor via electronic mail to Michael J. Merchant (merchant@rlf.com) and Amanda R. Steele (steele@rlf.com).   In the event that the Auction cannot be held at a physical location, the Auction will be conducted via a virtual meeting (either telephonic or via videoconference) the information to join which virtual meeting shall be provided by the Debtor to each Qualified Bidder prior to the Auction.  The Debtor (in consultation with the Consultation Parties) may continue the date and time of the Auction.  The Debtor shall file a notice of continued date and time of the Auction and serve such notice by email and overnight mail to Prospective Bidders and parties in interest.

11.     In the event the Debtor determines not to hold an Auction, the Debtor shall file with the Court, serve by email and overnight mail on the Sale Notice Parties, and cause to be published on the website maintained by Epiq Corporate Restructuring, LLC, the Debtor's claims and noticing agent in this Chapter 11 Case, located at https://dm.epiq11.com/case/ags (the "**Case Website**"), a notice containing the following information (as applicable): (a) a statement that the Auction has been canceled; (b) the identity of the Successful Bidder; (c) either include a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (d) the date, time, and location of the Sale Hearing.

8

12.     Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction, subject to any other limitations as the Debtor may reasonably impose in accordance with the Bidding Procedures. Qualified Bidders participating in the Auction must attend the Auction personally or through a duly authorized representative. The Debtor may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Bidder or otherwise attend the Auction.

13.     Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any Bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Royalty Assets identified in such Bid.

14.     The Debtor shall file a notice identifying the Successful Bidder and Backup Bidder (if selected) (the "**Notice of Successful Bidder**") as soon as reasonably practicable after closing of the Auction, if any, and in any event not later than **January 6, 2026**. The Notice of Successful Bidder will (i) identify the Successful Bidder and the Backup Bidder; (ii) either include a copy of the Successful Bid and the Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid and the Backup Bid free of charge from the Case Website; and (iii) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

**D.     Sale Noticing and Objection Procedures**

15.     Objections to the sale of the Royalty Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, any of the relief requested in the Motion, and entry of any order approving the sale (the "**Sale Order**") must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, the Bankruptcy

9

Rules, the Local Rules and all orders of the Court entered in the Chapter 11 Case, (iii) be filed with the Court by **December 30, 2025 at 4:00 p.m. (prevailing Eastern time)** (the "**Sale Objection Deadline**"), and (iv) be served upon the Objection Notice Parties and all other parties entitled to notice of same. Objections solely related to the identity of the Successful Bidder(s) (other than any Stalking Horse Bidder), the conduct of the Auction, if held, or adequate assurance of future performance by the Successful Bidder(s), may be made at the Sale Hearing (the "**Post-Auction Objection Deadline**").

16.     Any party who fails to file and serve a timely objection by the Sale Objection Deadline or the Post-Auction Objection Deadline, as applicable, in accordance with the terms of this Order shall be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation or performance of the sale of the Royalty Assets, including the transfer of the Royalty Assets to the Successful Bidder free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

17.     The Debtor may file a reply to any objection, if any, by no later than **January 6, 2026 at 4:00 p.m. (ET).**

18.     Consummation of the sale of the Royalty Assets pursuant to a Successful Bid shall be subject to Court approval. The Sale Hearing shall be held before the Court on **January 8, 2026, at [__] [_].m. (prevailing Eastern Time)**; *provided* that the Debtor may seek an adjournment of the Sale Hearing in accordance with the Bidding Procedures.

19.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. Service of the Sale Notice in accordance with the Motion was appropriate under the circumstances, and no other or further notice of the proposed sale of the Royalty Assets, the Auction, the Sale

Hearing, the Sale Objection Deadline, or the Post-Auction Objection Deadline shall be required; *provided*, *however*, by no later than three (3) business days after the entry of this Order, the Debtor shall cause the information contained in the Sale Notice to be published once in the national edition of *USA Today* and on the Debtor's Chapter 11 Case website:  https://dm.epiq.com/case/ags.

E.       **Assumption and Assignment Procedures**

20.      The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 3**, is approved, and no other or further notice of the Debtor's proposed Cure Costs with respect to Contracts listed on an Assumption and Assignment Notice is necessary or required.

21.      By no later than December 8, 2025, the Debtor shall file with the Court, serve by email and overnight mail on the applicable Counterparties (and counsel, if known), and cause to be published on the Case Website, the Assumption and Assignment Notice.

22.      Any objection to the Debtor's proposed Cure Costs (each such objection, a "**Cure Objection**") shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) be filed with the Court by no later than **December 30, 2025, at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

23.      The Debtor, any Stalking Horse Bidder or, as applicable, the Successful Bidder, and the objecting Counterparty shall first confer in good faith to attempt to resolve a Cure Objection without Court intervention.  If the parties are unable to consensually resolve a Cure Objection prior to the commencement of the Sale Hearing, the Court will make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled at a date and time agreeable by the parties in accordance with paragraph 24 of this Order.  If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the sale of the Royalty Assets, the Debtor, any Stalking Horse Bidder or, as applicable, the Successful Bidder, may determine that

11

any Contract subject to such resolved Cure Objection no longer will be assumed and assigned in connection with the sale of the Royalty Assets (subject to the terms of the applicable purchase agreement). All other objections to the Debtor's proposed assumption and assignment of the Debtor's right, title, and interest in, to, and under a Contract shall be heard at the Sale Hearing.

24.    If a timely Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, at the option of the Debtor, in consultation with the applicable Successful Bidder, be adjourned to a subsequent hearing (each such Cure Objection, an "**Adjourned Cure Objection**"). An Adjourned Cure Objection may be resolved after the closing date of the sale of the Royalty Assets. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Bidder, and subject to the Debtor's rights set forth in paragraph 23 of this Order, be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the sale of the Royalty Assets.

25.    If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract. The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

26.    In accordance with the Bidding Procedures, Qualified Bids shall be accompanied by Adequate Assurance Information (as defined in the Bidding Procedures). The Debtor shall use commercially reasonable efforts to, within one day after the Bid Deadline, but, in no event later than one day after the Debtor receives Adequate Assurance Information, serve by email or

overnight mail such Adequate Assurance Information on all Counterparties (and counsel, if known) to any Contract that may be assumed by the applicable Qualified Bidder.

27.    Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is a Successful Bidder's (or any other relevant assignee's) proposed form of adequate assurance of future performance with respect to the Contract (each such objection, an "**Adequate Assurance Objection**") may be raised at the Sale Hearing.

28.    If a Counterparty fails to raise an Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance.  The applicable Successful Bidder (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B), and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

29.    As soon as reasonably practicable after the closing of the sale of the Royalty Assets, the Debtor shall file with the Court, serve by email and overnight mail on the applicable Counterparties, and cause to be published on the Case Website, a notice containing the list of Contracts that the Debtor assumed and assigned pursuant to any asset purchase agreement with the Successful Bidder.

30.    The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination or admission by the Debtor, any Stalking Horse Bidder, the Successful Bidder, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned.  The

13

Debtor reserves all of its rights, claims, and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

31.     Without limiting any party's right to obtain such information earlier, any Stalking Horse Bidder shall submit to the Consultation Parties, on or before the Bid Deadline, a list of the Contracts that, as of the Bid Deadline, such Stalking Horse Bidder proposes to be assumed and assigned by the Debtor in connection with the sale of the Royalty Assets.

**F.     Other Related Relief**

32.     Notwithstanding anything to the contrary contained in this Order or otherwise:  (i) the DIP Lender's rights under the DIP Orders and the other DIP Documents, including its rights regarding the Sale or other disposition of any portion of the DIP Collateral (as defined in the DIP Orders) are hereby expressly reserved and not modified, waived or impaired in any way by this Order; (ii) all cash proceeds generated from the Sale or other disposition of any portion of the DIP Collateral, including, without limitation, any Royalty Assets, shall be paid to the DIP Lender upon the closing of such Sale or other disposition for permanent application against any outstanding DIP Obligations (as defined in the DIP Orders) until such time as all DIP Obligations have been paid in full in cash in accordance with the terms and conditions of the DIP Orders and the DIP Documents; and (iii) nothing in this Order is intended to, or shall be deemed to, modify, waive, or impair any of the provisions of the DIP Orders and the DIP Documents, or the rights and obligations of the Debtor, the DIP Lender, or any other party in interest thereunder.

33.     Notwithstanding anything to the contrary contained herein or in the Bidding Procedures, nothing in this Order or the Bidding Procedures shall (i) waive the DIP Lender's right to credit bid (any such credit bid, a "**DIP Credit Bid**") any portion of, and up to the full amount of, the value of the DIP Obligations with respect to any individual Royalty Asset, any portion of the Royalty Assets, or all Royalty Assets, in each case constituting DIP Collateral by which the

DIP Obligations are secured; (ii) be construed as a waiver of, or a finding that any credit bid satisfies the requirements of, section 363(k) of the Bankruptcy Code; or (iii) prejudice any party in interest's rights to object to a credit bid on any basis (subject to the limitations set forth in the DIP Orders), or any other party's right to oppose such objection.

34.     If a Bid (including a DIP Credit Bid) is submitted by, or on behalf of, the DIP Lender, (a) such Bid shall be deemed a Qualified Bid in all respects and notwithstanding the fact that such Bid might not satisfy some or all of the requirements or conditions for a Bid to constitute a Qualified Bid, (b) the DIP Lender and/or the person or entity submitting the Bid on its behalf (including any agent or other representative for the DIP Lender) shall be deemed a Qualified Bidder, (c) the DIP Lender and/or the person or entity submitting the Bid on their behalf (including any agent or other representative for the DIP Lender) shall not be required to provide a Deposit, and (d) any Bid (including a DIP Credit Bid) submitted by, or on behalf of, the DIP Lender need only be a written notice that specifies (either specifically or generally) the amount of the DIP Obligations and/or other consideration that are the subject of such Bid and the Royalty Assets that are the subject of such Bid.

35.     Upon consummation of a sale pursuant to a DIP Credit Bid, or consummation of any Bid submitted by, or on behalf of, the DIP Lender, the DIP Lender shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Royalty Assets, or all of the Royalty Assets, and the DIP Lender shall have the right to designate any person or entity that shall take title to the individual Asset, portion of the Royalty Assets, or all of the Royalty Assets that are subject to the applicable DIP Credit Bid or Bid.

RLF1 34196803v.6

36.    In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit or Backup Bidder's Deposit, as applicable, shall be forfeited to the Debtor and its estate, constitute DIP Collateral and be subject to the DIP Liens (as defined in the DIP Orders), and all rights of the Debtor and its estate are specifically reserved to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable.

37.    All persons and entities that participate in the Auction or bidding for the Royalty Assets during the Sale Process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

38.    Nothing in this Order, or any of the Exhibits hereto, shall prevent the Debtor from exercising its fiduciary duties in consummating or otherwise pursuing an alternative transaction, including, but not limited to, nothing herein shall obligate the Debtor to consummate or pursue any transaction with respect to any asset with a Qualified Bidder.

39.    Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable

upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

40.     The Debtor is authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

41.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

RLF1 34196803v.6

**<u>Exhibit 1</u>**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ALACHUA GOVERNMENT SERVICES, INC., | Case No. 25-11289 (JKS) |
| Debtor[1] | |

## BIDDING PROCEDURES

On July 6, 2025 (the "Petition Date"), the above captioned debtor and debtor in possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court"), commencing the above-captioned chapter 11 case (the "Chapter 11 Case").

On [ ], 2025, the Court held a hearing (the "Bidding Procedures Hearing") on the *Motion of the Debtor for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of the Debtor's Royalty Assets, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder and to Provide Bidding Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtor's Royalty Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Motion").

On [ ], 2025, the Court entered an order [Docket No. [●]] (the "Bidding Procedures Order"),[2] which authorized, among other things, the Debtor to solicit bids in accordance with the procedures outlined herein (collectively, the "Bidding Procedures") for a sale or disposition (a "Sale Transaction," and collectively, the "Sale") of all or any portion for the Royalty Assets (as defined below).

The Bidding Procedures sets forth the process by which the Debtor is authorized and directed to solicit the highest or otherwise best Bid (as defined below) for the Debtor's ownership of certain Vero cell lines and related intellectual property used in the development of a smallpox vaccine by third parties (the "Royalty Assets"), culminating in an auction (the "Auction") solely if competing Qualified Bids (as defined below) are received. The Sale is contemplated to be implemented pursuant to the terms and conditions of the applicable asset

---

[1]    The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is Alachua Government Services, Inc. (5370). The Debtor's mailing address is 13200 NW Nano Court, Alachua, Florida 32615.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Motion or the Bidding Procedures Order.

purchase agreement(s) upon the receipt of a Successful Bid (as defined below) that the Debtor has determined, in its business judgment and in consultation with the Consultation Parties (as defined below) is the highest and otherwise best offer for the Royalty Assets in accordance with the Bidding Procedures.

---

**Copies of the Bidding Procedures Order and any other documents in the Debtor's Chapter 11 Case are available at the Debtor's Chapter 11 Case website: https://dm.epiq11.com/case/ags**

**or upon request to the following:**

**Jefferies LLC ("Jefferies")**
**520 Madison Avenue**
**New York, NY 10022**
**Attn: Michael O'Hara, Kevin Murray**
**Email: Project.Ace.2025.RX@Jefferies.com**
**Tel.: +1(212) 323-3998**

---

## KEY DATES

The key dates for the sale process are as follows. The Debtor, in consultation with the Consultation Parties, may extend any of the deadlines, or delay any of the applicable dates, set forth herein or in the Bidding Procedures Order.

| PROPOSED DATE | EVENT |
|---|---|
| December 8, 2025 | Deadline for Debtor to file and serve Sale Notice |
| December 8, 2025 | Deadline for Debtor to file and serve Assumption and Assignment Notice |
| December 10, 2025 | Stalking Horse Designation Deadline |
| December 15, 2025 | Stalking Horse Objection Deadline |
| December 19, 2025, at 4:00 p.m. (ET) | Bid Deadline |
| December 30, 2025, at 4:00 p.m. (ET) | Sale Objection Deadline and Cure Objection Deadline |
| January 5, 2026, at 10:00 a.m. (ET), at the Offices of Richards, Layton & Finger, P.A., Wilmington, Delaware | Auction |
| January 6, 2026 | Deadline for Debtor to file and serve Notice of Successful Bidder |
| January 6, 2026 at 4:00 p.m. (ET) | Debtor's Deadline to Reply to Objections |
| At the Sale Hearing | Post-Auction Objection Deadline and Adequate |

| | Assurance Objection Deadline |
|---|---|
| **January 8, 2026, subject to the availability of the Court** | Sale Hearing |
| **January 15, 2026** | Deadline to consummate approved sale transaction |

## PARTICIPATION REQUIREMENTS

### 1.   Prospective Bidders

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in the Royalty Assets or any portion thereof (other than a Stalking Horse Bidder) (an "Interested Party") must deliver to the investment banker to the Debtor, Jefferies LLC, 520 Madison Avenue, New York, NY 10022, Attn: Michael O'Hara, Kevin Murray (Project.Ace.2025.RX@Jefferies.com), the following documents and information (collectively, the "Preliminary Bid Documents"):

(a)   the identification of the Interested Party and any principals and representatives thereof (including counsel), including by identifying those principals and representatives who are authorized by the Interested Party to appear and act on such Interested Party's behalf for all purposes under the Bidding Procedures regarding the Interested Party's contemplated Sale Transaction;

(b)   a description of any and all connections that the Interested Party (including its affiliates and any related persons) may have to (a) the Debtor, (b) any current or former directors and officers of the Debtor, (c) the Debtor's non-Debtor affiliates, and (d) the Debtor's primary creditors as identified by the Debtor;

(c)   preliminary proof of such Interested Party's financial capacity to close a proposed Sale Transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, such Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring all or a portion of the Royalty Assets, the party that will bear liability for a breach by the Interested Party of an asset purchase agreement or other agreement entered into in respect of the proposed Sale Transaction) the adequacy of which the Debtor will determine in its sole discretion; and

(d)   an executed confidentiality agreement in form and substance acceptable to the Debtor (a "Confidentiality Agreement").[3]

Each Interested Party shall comply with all reasonable requests for information from the Debtor regarding the ability of such Interested Party to consummate its contemplated Sale Transaction.

---

[3]   Interested Parties may obtain a copy of a Confidentiality Agreement by requesting a copy from the Debtor's counsel, Richards, Layton & Finger, P.A. (Attn: Michael J. Merchant (merchant@rlf.com) and Amanda R. Steele (steele@rlf.com)).

3

If the Debtor, in consultation with its advisors and the Consultation Parties, determines that an Interested Party has timely delivered adequate Preliminary Bid Documents, such Interested Party shall be eligible to receive due diligence information as described below (each such Interested Party after timely delivering adequate Preliminary Bid Documents, a "Prospective Bidder"); *provided* that the Debtor will notify any Interested Party that has not submitted adequate Preliminary Bid Documents so that such Interested Party has the opportunity to remedy any inadequacies and become a Prospective Bidder. The Debtor, in consultation with its advisors and the Consultation Parties, will determine and notify each Interested Party whether it has submitted adequate Preliminary Bid Documents.

## 2.    Due Diligence

Only Prospective Bidders, a Stalking Horse Bidder and the DIP Lender shall be eligible to receive due diligence information and reasonable access to the Debtor's confidential electronic data room concerning the Royalty Assets (the "Data Room"). The Debtor, with the aid of its advisors, shall coordinate all reasonable requests from Prospective Bidders for additional information and due diligence access; *provided* that the Debtor may withhold or limit the access of any Prospective Bidder (including its affiliates and any related persons) to the Data Room or other due diligence materials at any time and for any reason, including, without limitation, if (a) any due diligence information is determined to be business sensitive, proprietary, or otherwise not appropriate for disclosure to a Prospective Bidder by the Debtor, (b) the Prospective Bidder does not become, or the Debtor determines the Prospective Bidder is not likely to become, a Qualified Bidder (as defined below), (c) the Prospective Bidder violates the terms of its Confidentiality Agreement, (d) the Debtor becomes aware that the information set forth in the Preliminary Bid Documents is inaccurate or misleading or of any other reason to doubt such Prospective Bidder's ability to close its contemplated transaction, (e) the Prospective Bidder (including its affiliates and any related persons) uses information obtained from the Data Room or the diligence process in connection with, or related to, any litigation or other legal action related to the Debtor, (f) such disclosure would jeopardize protections afforded the Debtor or primary creditor as identified by the Debtor under the attorney-client privilege or the attorney work product doctrine, or (g) the bidding process is terminated in accordance with its terms.

Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtor and its estate will be authorized to provide due diligence information to each Prospective Bidder that has delivered an executed Confidentiality Agreement. Notwithstanding anything to the contrary herein, the Debtor reserves the right to withhold any diligence materials that the Debtor believes in good faith and in the exercise of its business judgment are sensitive or otherwise not appropriate for disclosure.

Each Interested Party or Prospective Bidder shall comply with all reasonable requests by the Debtor or its advisors with respect to information, documentation, and due diligence access regarding such Interested Party or Prospective Bidder, as applicable, and its contemplated Sale Transaction.

The due diligence period will end on the Bid Deadline (as defined below) and, subsequent to the Bid Deadline, the Debtor shall have no obligation to furnish any due diligence

information. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed reasonably appropriate by the Debtor in consultation with the Consultation Parties.

> **The Debtor has designated Jeffries to coordinate all reasonable requests for additional information and due diligence access. Contact information for Jeffries is as follows:**
>
> **Jefferies LLC and Jefferies International Limited**
> **Attn: Michael O'Hara (michael.ohara@jefferies.com) and Kevin Murray (kevin.murray@jeffereies.com)**

3.      **No Communications Among Bidders**

There shall be no communications regarding the Debtor's sale process between and among Prospective Bidders or between Prospective Bidders and/or Qualified Bidders, on the one hand, and the Consultation Parties, on the other hand, unless the Debtor has previously authorized such communication in writing (email being sufficient) and that any communications authorized by the Debtor, in accordance with this paragraph, shall require such parties to include a representative (identified by the Debtor or the Debtor's advisors in the writing authorizing such communications) be copied or included in all such communications; provided that nothing in this paragraph or any Confidentiality Agreement shall preclude (a) a Stalking Horse Bidder or the DIP Lender from communicating with the Debtor or the other Consultation Parties, (b) the Stalking Horse Bidder or the DIP Lender from communicating with other Interested Parties and/or Prospective Bidders, in each case that are affiliates of such Stalking Horse Bidder or the DIP Lender, or (c) prohibit any communications between the Interested Parties and/or Prospective Bidders or between Interested Parties and/or Prospective Bidders, on the one hand, and the Consultation Parties, on the other hand, about matters unrelated to the Debtor's Sale process, and (d) receiving an inbound communication from a third party and responding that communications are not permissible absent authorization by the Debtor.  The Debtor reserves the right, in its reasonable business judgment and in consultation with the Consultation Parties, to disqualify any Prospective Bidders (other than a Stalking Horse Bidder or the DIP Lender) that have communications between and among themselves, or with a Consultation Party, without the Debtor's written consent.

<u>**STALKING HORSE DESIGNATION PROCEDURES**</u>

The Stalking Horse Designation procedures set forth in paragraph 6 of the Bidding Procedures Order apply to the designation of any Stalking Horse Agreements, Stalking Horse Bidder, and Bid Protections.

Any Stalking Horse Agreement executed by the Debtor and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

**Other than as provided by order of the Court, no party submitting a Bid shall be**

entitled to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  Any substantial contribution claims by any Bidder are deemed waived, to the extent based on solely on such Bidder's submission of a Bid hereunder.

## QUALIFIED BID REQUIREMENTS

To be eligible to participate in the Auction, each offer, solicitation, or proposal to acquire the Royalty Assets (each, a "Bid"), other than a Stalking Horse Bid, must be delivered or transmitted via email (in pdf or similar format) so as to be **actually received** by Jefferies no later than **4:00 p.m. (prevailing Eastern time) on December 19, 2025** (the "Bid Deadline"), or such other date as may be agreed by the Debtor in accordance with the terms hereof.

In order to constitute a Qualified Bid (as defined below), a Bid must satisfy each of the following conditions:

1.  **Irrevocability of Bid**.  The Bid must include a letter stating that the Prospective Bidder's offer is irrevocable and binding until the closing of the Sale if such Prospective Bidder is the Successful Bidder, and that the Prospective Bidder agrees to serve as a Backup Bidder (as defined below) if such bidder's Bid is selected as the next highest or otherwise next best bid after the Successful Bid (as defined below).

2.  **Assets and Liabilities**.  The Bid must clearly identify the following: (a) the Royalty Assets to be purchased and (b) the liabilities and obligations to be assumed, including any indebtedness to be assumed, if any.

3.  **Designation of Assigned Contracts and Leases**.  The Bid must identify any and all executory contracts and unexpired leases of the Debtor that the bidder wishes to be assumed and assigned to the bidder at closing.  The Bid must confirm that the bidder will be responsible for any Cure Costs associated with such assumption and include a good faith estimate of such Cure Costs (which estimate may be provided by the Debtor).

4.  **Purchase Price**.  The Bid must clearly set forth the cash purchase price, and any other non-cash consideration (with the form of such consideration specified), to be paid.

5.  **Minimum Bid**.  Each Bid must either (a) (i) provide for the payment of aggregate consideration, in the Debtor's good-faith business judgment, the value of which is in excess of at least the sum of (x) the purchase price under a Stalking Horse Agreement plus (y) any Bid Protections approved by the Court and clear the minimum Overbid (as defined below) amount which shall be made in increments of at least $1,000,000 in cash, cash equivalents, or such other consideration that the Debtor deems equivalent (in consultation with the Consultation Parties); or (b) propose an alternative transaction that, after consultation with the Consultation parties, in the Debtor's good faith business judgment, provides higher value or better terms than a Stalking Horse Bid.  The Debtor and its advisors may determine appropriate minimum Bid increments for each round of bidding.

6

Notwithstanding anything to the contrary herein, this requirement cannot be amended or modified without the consent of the DIP Lender.

6. **Deposit**. Each Bid (except for a DIP Credit Bid) must be accompanied by a good faith deposit in the form of cash in an amount equal to not less than ten percent (10%) of the aggregate purchase price of the Bid to be held in an escrow account to be identified and established by the Debtor (the "Deposit"). For the avoidance of doubt, to the extent the Purchase Price of a Bid is increased, at any time or from time to time, whether prior to commencement of the Auction (if any) or during the Auction (if any), the amount of the Deposit shall automatically increase accordingly (i.e., to become equal to ten percent (10%) of any increased Purchased Price) and the corresponding bidder will promptly pay into escrow the amount of such increase, within one (1) business day, following such increase. Without limiting the foregoing, if a Purchase Price is increased in order to make a bid into a Qualified Bid, the Debtor may condition participation of the applicable bidder at the Auction (if any) on such bidder paying the then full amount of the Deposit into escrow prior to the commencement of such Auction or such participation.[4]

7. **Asset Purchase Agreement**. Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"). The Bid Documents shall include a copy of the asset purchase agreement, including a complete set of all disclosure schedules and exhibits thereto, and marketed against, either the form asset purchase agreement to be provided by the Debtors to Prospective Bidders (the "Form APA") or, if applicable, the Stalking Horse Agreement, to reflect the proposed sale transaction and to show any other proposed modifications to the Form APA or Stalking Horse Agreement, as applicable, as well as all other material documents integral to such Bid.

8. **Adequate Assurance Information**. The Bid must include sufficient financial or other information (the "Adequate Assurance Information") to establish adequate assurance of future performance with respect to any lease or contract to be assigned to the Qualified Bidder (as defined below) in connection with the proposed Sale which shall include (i) audited and unaudited financial statements, (ii) tax returns, (iii) bank account statements, (iv) a description of the manner in which the Bidder plans to capitalize and manage the business going forward, and (v) any such other documentation or information as the Debtor may request (the foregoing clauses (i)-(v) and/or such other documentation and information satisfactory to the Debtor to demonstrate an Prospective Bidder's adequate assurance of future performance, collectively, the "Adequate Assurance Package"). The Bid shall also identify a contact person (with relevant contact

---

[4] For the avoidance of doubt, the liens granted to the DIP Lender in this Chapter 11 Case, as set forth in the *Final Order (A) Authorizing Debtor to (I) Obtain Postpetition Financing and (II) Use Cash Collateral, (B) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (C) Granting Adequate Protection, (D) Modifying Automatic Stay, and (E) Granting Related Relief* [Docket No. 141] (the "DIP Order"), shall attach to any and all of the Debtor's and the estate's rights and interests in the Deposit.

information) that counterparties to any lease or contract can contact to obtain additional Adequate Assurance Information.  The Adequate Assurance Package must be submitted to the Debtor and its advisors at the time of the Bid's submission in its own compiled pdf document.  Any requests made by the Debtor or its advisors thereafter for further or supplemental information or documentation must be promptly provided to the Debtor and its advisors.

9. **Proof of Financial Ability to Perform**.  Each Bid must include written evidence that the Debtor reasonably concludes that the bidder has the necessary financial ability to timely close the proposed Sale Transaction in accordance with the Bidding Procedures. Such information must include (i) contact names, telephone numbers, and email addresses for verification of financing sources; (ii) evidence of the bidder's internal financing resources and, if applicable, proof of fully executed and effective financing commitments with limited conditionality customary for transactions of the proposed Sale Transaction's type from one or more reputable financing sources in an aggregate amount equal to the Cash portion of such Bid (including, if applicable, the payment of Cure Costs), in each case, as are required to timely close the Sale Transaction; (iii) any other financial disclosure or credit-quality support information or enhancement requested by the Debtor demonstrating that such bidder has the ability to timely close the proposed Sale Transaction in accordance with the Bidding Procedures.

10. **Contingencies; No Financing or Diligence Outs**.  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

11. **Identity**.  The Bid must fully disclose the identity of the party submitting the Bid (and any equity holders, limited partners, or other financial backer), its full legal name, jurisdiction of incorporation or formation, and location in the Prospective Bidder's corporate structure and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale.

12. **As-Is, Where-Is**.  The Bid must include the following representations and warranties:  (a) a statement expressly confirming that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Royalty Assets prior to submitting its Bid, (b) a statement that the Prospective Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Royalty Assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, by the Debtor, Jeffries, or the Debtor's advisors regarding the Debtor's business or the Royalty Assets or the completeness of any information provided in connection therewith, except, solely with respect to the Debtor, as expressly stated in the representations and warranties contained in the Prospective Bidder's proposed asset purchase agreement ultimately accepted and executed by the Debtor;  and (c) the Prospective Bidder's agreement to not use information obtained from the Data Room or the diligence process in connection with, or

related to, any litigation or other legal actions between such Prospective Bidder (including its affiliates and any related persons) and the Debtor, any current or former directors and officers of the Debtor, the Debtor's affiliates, and/or the Debtor's primary creditors as identified by the Debtor.

13. **Authorization**.  The Bid must include evidence that the Prospective Bidder has obtained authorization or approval from its board of directors (or comparable governing body) acceptable to the Debtor with respect to the submission, execution, and delivery of its Bid and Bid Documents, participation in the Auction, and closing of the proposed transaction(s) contemplated in such Bid. The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith shall be made by the Prospective Bidder.

14. **Disclaimer of Fees**.  Each Bid (other than a Stalking Horse Bid) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, "topping" or termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Qualified Bidder (other than a Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtor, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under §503(b) of the Bankruptcy Code.

15. **Time Frame for Closing**.  A Bid by a Prospective Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations in the Debtor's business judgment) to be consummated, if selected as the Successful Bid, within a time frame reasonably acceptable to the Debtor (in consultation with the Consultation Parties) and, in any event, by the Sale Consummation Deadline. The Prospective Bidder must commit to closing the proposed Sale(s) contemplated by the Bid as soon as practicable and provide perspective on any potential regulatory issues that may arise in connection with such Prospective Bidder's acquisition of the Royalty Assets including timing for resolution thereof.

16. **Adherence to Bidding Procedures**.  Each Bid must include (a) a statement that the Prospective Bidder has acted in good faith consistent with §363(m) of the Bankruptcy Code and (b) a statement that the Prospective Bidder agrees to be bound by, and has complied with, the Bidding Procedures.

17. **Joint Bids**.  The Debtor is authorized to approve joint bids, in the exercise of its business judgment and in consultation with the Consultation Parties on a case-by-case basis; *provided* that the foregoing is subject to the restrictions on communications among bidders set forth herein, and that the Debtor authorizes any joint bids in writing (email being sufficient).

18.  **No Collusion**.  The Prospective Bidder must acknowledge in writing that (a) in connection with submitting its Bid, it has not engaged in any collusion that would be subject to §363(n) of the Bankruptcy Code with respect to any Bids or the Sale, specifying that it did not agree with any Prospective Bidders or Qualified Bidders to control price and (b) it agrees not to engage in any collusion that would be subject to §363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale.

19.  **Other Information**.  The Bid contains such other information as may be reasonably requested by the Debtor.

A Bid received that meets the above requirements, as determined by the Debtor, in consultation with its advisors and the Consultation Parties, in the Debtor's reasonable business judgment will constitute a "Qualified Bid" for the Royalty Assets (and the Prospective Bidder submitting such Qualified Bid will constitute a "Qualified Bidder"); *provided* that, if the Debtor receives a Bid that does not meet the requirements for a Qualified Bid, the Debtor may provide the Prospective Bidder with the opportunity to remedy any deficiencies before the Auction in order to render such Bid a Qualified Bid; *provided, further*, that, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access requested by the Debtor to the satisfaction of the Debtor, the Debtor may, after consulting with the Consultation Parties, disqualify any Qualified Bidder and Qualified Bid and such Qualified Bidder will not be entitled to attend or participate in the Auction.  The Debtor may also, after consulting with the Consultation Parties, waive or modify any of the above requirements in the exercise of its reasonable business judgment.

The Debtor reserves the right, in the exercise of its business judgment and in consultation with the Consultation Parties, to work with (A) Prospective Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline and (B) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction (if any); *provided, however*, that the Debtor reserves the right, in the exercise of its business judgment, to condition any pairing or combination of Bids as set forth in this paragraph on conditions, pertaining to the ultimate disposition of any Assets sought by the relevant Bid(s) or otherwise, as the Debtor believes, in consultation with its advisors and the Consultation Parties, is in the best interests of the Debtor and its estate.

Notwithstanding anything to the contrary in the Bidding Procedures, a Stalking Horse Bidder shall be deemed to be a Qualified Bidder, and the Stalking Horse Agreement shall be deemed to be a Qualified Bid, such that the Stalking Horse Bidder shall not be required to submit an additional Qualified Bid.  If the Stalking Horse Agreement is chosen as the Successful Bid, the rights and obligations of the Stalking Horse Bidder shall be as set forth in the Stalking Horse Agreement.

## QUALIFIED BIDDERS

Prior to the commencement of the Auction, the Debtor shall notify each Prospective Bidder whether such party is a Qualified Bidder.  Promptly upon designating the Qualified Bidders, the Debtor shall provide the Adequate Assurance Information received from the

applicable Qualified Bidder to the Consultation Parties pursuant to such Qualified Bidder's proposed transaction. If any Bid is determined by the Debtor (in consultation with the Consultation Parties) not to be a Qualified Bid, the Debtor will refund such Prospective Bidder's Deposit on or before the date that is five (5) business days after the Bid Deadline.

Between the date that the Debtor notifies a Prospective Bidder that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtor (email being sufficient), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures.

Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtor or its advisors regarding the ability of such Qualified Bidder to consummate its contemplated transaction. Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtor to determine that such bidder is no longer a Qualified Bidder or that a Bid made by such bidder is not a Qualified Bid.

The Debtor, in consultation with the Consultation Parties, will evaluate whether a Bid constitutes a Qualified Bid using any and all factors that the Debtor deems reasonably pertinent, including, without limitation, (i) the amount of the purchase price set forth in the Bid, (ii) the risks and timing associated with consummating a sale transaction(s) with the Prospective Bidder, (iii) any Assets included in or excluded from the Bid, including any proposed assumed contracts or leases; (iv) any liabilities and obligations assumed as part of the Bid, (v) the ability to obtain any and all necessary regulatory approvals for the proposed sale transaction, (vi) the net benefit to the Debtor's estate, and (vii) the tax consequences of such Bid.

If no Qualified Bids, other than a Stalking Horse Bid, are received by the Bid Deadline, then the Auction will not occur, and such Stalking Horse Bidder shall be deemed the Successful Bidder, and the Debtor shall pursue entry of an order by the Court, in form and substance acceptable to the Stalking Horse Bidder, approving the Stalking Horse Agreement and authorizing the Sale to the Stalking Horse Bidder at the Sale Hearing (as defined below).

If a Bid (including a DIP Credit Bid) is submitted by, or on behalf of, the DIP Lender, (a) such Bid shall be deemed a Qualified Bid in all respects and notwithstanding the fact that such Bid might not satisfy some or all of the requirements or conditions for a Bid to constitute a Qualified Bid, (b) the DIP Lender and/or the person or entity submitting the Bid on its behalf (including any agent or other representative for the DIP Lender) shall be deemed a Qualified Bidder, (c) the DIP Lender and/or the person or entity submitting the Bid on the DIP Lender's behalf (including any agent or other representative for the DIP Lender) shall not be required to provide a Deposit, and (d) any Bid (including a DIP Credit Bid) submitted by, or on behalf of, the DIP Lender need only be a written notice that specifies (either specifically or generally) the amount of the DIP Obligations and/or other consideration that are the subject of such Bid and the

11

Royalty Assets that are the subject of such Bid.

## AUCTION

If one or more Qualified Bids is received by the Bid Deadline, the Debtor will conduct the Auction with respect to the Royalty Assets. The Debtor (in consultation with the Consultation Parties) may continue the date and time of Auction. The Debtor shall provide notice of the continued date and time of the Auction to Prospective Bidders and parties in interest. If the Debtor does not receive any Qualified Bids (other than a Stalking Horse Bid), the Debtor will not conduct the Auction and will designate such Stalking Horse Agreement as the Successful Bid.

Prior to the commencement of the Auction, the Debtor will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtor's reasonable business judgment (in consultation with the Consultation Parties) (the "Baseline Bid"), and provide copies of the Bid Documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtor (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid to the Debtor's estate, including, among other things, the following: (i) the amount and nature of the consideration, including any obligations to be assumed; (ii) the executory contracts and unexpired leases of the Debtor, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with such bid; (iii) the number, type, and nature of any changes to a Stalking Horse Agreement, if any and as applicable, requested by each Qualified Bidder; (iv) the extent to which such modifications are likely to delay closing of the sale of the Royalty Assets and the cost to the Debtor of such modifications or delay; (v) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; (vi) the net benefit to the Debtor's estate; and (vii) the tax consequences of such Qualified Bid.

The Auction shall take place on **January 5, 2026 at 10:00 a.m. (prevailing Eastern time)**, at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, or such later date, time and location as designated by the Debtor (in consultation with the Consultation Parties), after providing notice to the following parties (collectively, the "Notice Parties"): (i) the DIP Lender and its counsel, (ii) the United States Trustee for the District of Delaware, (iii) the Prepetition Secured Lender, and (iv) counsel to the official committee of unsecured creditors appointed in the Chapter 11 Case (the "Committee"). In the event that the Auction cannot be held at a physical location, the Auction will be conducted via a virtual meeting (either telephonic or via videoconference) the information to join which virtual meeting shall be provided by the Debtor to each Qualified Bidder prior to the Auction.

## I. Participation and Attendees

The Debtor, with the assistance of its advisors, shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids and shall be made and received on an open

basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a written transcript of the Auction and of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid.

Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtor (in consultation with the Consultation Parties) in accordance with the Bidding Procedures. Qualified Bidders participating in the Auction must appear in person (or through a duly authorized representative), telephonically, or through a video teleconference.

The Auction will be conducted openly and all creditors will be permitted to attend (but, unless such creditor is a Qualified Bidder or Consultation Party, not participate in) the Auction, to be evaluated and determined by the Debtor in its reasonable discretion; *provided* that any such creditor that wishes to attend the Auction must provide the Debtor with written notice of their intent to attend the Auction two (2) business days prior to the Auction, which written notice shall be sent to counsel for the Debtor via electronic mail to Michael J. Merchant (merchant@rlf.com) and Amanda R. Steele (steele@rlf.com).

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any Bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Royalty Assets identified in such Bid.

## II.    Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtor's right to modify such procedures in its reasonable business judgment (in consultation with the Consultation Parties):

1.    **Baseline Bids**.  Bidding shall commence at the amount of the Baseline Bid.

2.    **Minimum Overbid**.  Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the Baseline Bid for the relevant Assets (each such Bid, an "Overbid").  Any Qualified Bidder's initial Overbid shall be made in increments of at least $1,000,000 in cash, cash equivalents, or such other consideration that the Debtor deems equivalent (in consultation with the Consultation Parties).  The Debtor may, in its reasonable business judgment (in consultation with the Consultation Parties), announce increases or reductions to initial or subsequent Overbids at any time during the Auction.

3.    **Highest or Best Offer**.  After the first round of bidding and between each subsequent round of bidding, the Debtor (in consultation with the Consultation Parties) shall announce the Bid that the Debtor believes in its reasonable business judgment to be the highest or otherwise best offer for the relevant Assets (the "Leading Bid") and describe the material terms thereof, after taking into effect payment of the Break-Up Fee.  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent Bid with full knowledge of the Leading Bid.  To the extent not previously provided

(which is determined by the Debtor), a Qualified Bidder submitting a subsequent Bid must submit, as part of its subsequent Bid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, in consultation with the Consultation Parties, which availability is not otherwise conditioned on obtaining financing or any internal approval other than customary conditions in financing commitments) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such subsequent Bid.

4.      **Rejection of Bids**.  The Debtor may, in its reasonable business judgment (in consultation with the Consultation Parties) reject, at any time before entry of an order of the Court approving a Qualified Bid, any Bid that the Debtor determines is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtor, its estate, its creditors, and other stakeholders.

5.      **No Round-Skipping**. Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtor in its reasonable business judgment (in consultation with the Consultation Parties), such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such Purchased Assets; provided that, with the consent of the Consultation Parties, the Debtor may adopt and utilize the Auction procedures other than the foregoing procedure for any round of bidding.

6.      **Additional Information**.   The Debtor (including in consultation with the Consultation Parties) shall have the right to request any additional financial information that will allow the Debtor to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by its proposal and any further information that the Debtor believes is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction.

7.      **Modification of Procedures**.  The Debtor may announce at the Auction modified or additional procedures for conducting the Auction, or otherwise modify the Bidding Procedures, in each case in consultation with the Consultation Parties; *provided* that at no point may the form of currency be in a form other than cash. All such modifications and additional rules will be communicated in advance to each of the Consultation Parties and Qualified Bidders; *provided* that, to the extent such modifications occur at the Auction, disclosure of such modifications shall be limited to those in attendance at the Auction.

14

The Auction shall include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional Bids and make modifications to any prior Qualified Bid or Overbid at the Auction to improve their Bids; *provided* that any Overbid made by a Qualified Bidder (including with respect to any Backup Bid) must remain open and binding on the Qualified Bidder until the close of the Auction, and, if selected as either a Successful Bid or a Backup Bid, until the closing of the Sale Transaction contemplated by such Successful Bid or Backup Bid.  The Debtor may, in its reasonable business judgment (in consultation with the Consultation Parties), negotiate with any and all Qualified Bidders participating in the Auction.

## SUCCESSFUL BIDDER

Immediately prior to the conclusion of the Auction, the Debtor shall (i) determine (subject to the consent of the DIP Lender and after consultation with the other Consultation Parties) consistent with the Bidding Procedures, which Bid constitutes the highest or otherwise best Bid for the Royalty Assets (each such bid, a "Successful Bid") and (ii) notify all Qualified Bidders at the Auction for the Royalty Assets of the identity of the bidder that submitted the Successful Bid (each such bidder, the "Successful Bidder") and the amount of the purchase price and other material terms of the Successful Bid.  The terms of the Successful Bid and the Backup Bid (as defined below) shall be acceptable to the DIP Lender and shall, among other things, provide that all cash proceeds generated from the Sale shall be paid to the DIP Lender upon the closing of such Sale for permanent application against any outstanding DIP Obligations until such time as all DIP Obligations have been paid in full in cash in accordance with the terms and conditions of the DIP Orders and the DIP Documents.

The Debtor shall file a notice identifying the Successful Bidder and Backup Bidder (if selected) (the "Notice of Successful Bidder") as soon as reasonably practicable after closing of the Auction, if any, and in any event not later than January 6, 2026.

The Debtor's presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtor's acceptance of such Qualified Bid.  The Debtor will be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing.  The Debtor shall seek approval by the Court to consummate the Backup Bid, solely in the event the Successful Bidder fails to close the transaction as provided in the Successful Bid and with all rights reserved against the Successful Bidder.

## BACKUP BIDDER

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid as compared to the Successful Bid at the Auction for the Royalty Assets, as determined by the Debtor in the exercise of its reasonable business judgment (in consultation with the Consultation Parties) (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder"), and such Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated; *provided* that, if a Stalking Horse Bidder is selected as the Backup Bid, such Bid must remain irrevocable only for so long as is required under the Stalking Horse Agreement.  If the DIP Lender submits a DIP Credit Bid prior to the end of the Auction for any particular

Assets, and the Debtors have identified another Successful Bidder for those same Assets, the DIP Lender shall automatically serve as the Backup Bidder on account of their DIP Credit Bid, or if another Backup Bidder (with a higher or better offer than the DIP Credit Bid) is selected, a backup to the Backup Bidder.

The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtor at the conclusion of the Auction, if any, at the same time the Debtor announces the identity of the Successful Bidder.

The Backup Bid shall remain binding on the Backup Bidder until the closing of a Sale Transaction for the applicable Assets pursuant to the Successful Bid. If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtor may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.

## RETURN OF DEPOSIT

The Deposit of the Successful Bidder, if applicable, shall be applied to the purchase price of such transaction at closing. The Deposits for each Qualified Bidder (including a Stalking Horse Bidder) shall be held in one or more accounts on terms acceptable to the Debtor (in consultation with the Consultation Parties) and shall be returned (other than with respect to the Successful Bidder, and the Backup Bidder) on or before the date that is ten (10) business days after the Auction. The Backup Bidder's Deposit shall be held in escrow until the closing of the Sale with the Successful Bidder. In the event the Successful Bidder fails to close and the Debtor opts to close on the Sale Transaction(s) set forth in the Backup Bid, the Backup Bidder's Deposit shall be applied to the purchase price of such transaction(s) at closing. In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit or Backup Bidder's Deposit, as applicable, shall be forfeited to the Debtor and its estate, constitute DIP Collateral and be subject to the DIP Liens, and the Debtor and its estate specifically reserve the right to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable.

## CONSULTATION BY THE DEBTOR

The Debtor shall consult with the Consultation Parties as explicitly provided for in the Bidding Procedures. Each reference in the Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith. The term "Consultation Parties" as used in the Bidding Procedures shall mean (i) the DIP Lender and its advisors[5] and (ii) the Committee and its advisors.

---

[5] For the avoidance of doubt, nothing in these Bidding Procedures or the Bidding Procedures Order limits or in any way alters the DIP Lender's rights (including in respect of consents and approvals) under the DIP Order and the other DIP Documents (as defined in the DIP Order). The DIP Lender's rights in its capacity as a Consultation Party are in addition to its rights under the DIP Documents. In the event of any conflict or inconsistency between any of the DIP Documents and these Bidding Procedures or the Bidding Procedures Order, the applicable DIP Documents shall control.

Notwithstanding the foregoing, if a Consultation Party elects to become an active bidder and submit a bid for the Assets, such party will no longer be deemed a Consultation Party; *provided*, that if any Consultation Party that is an active bidder unequivocally withdraws its bid for the Assets, such party shall be entitled to the rights afforded to a Consultation Party upon the withdrawal of its bid. For the avoidance of doubt, the Debtor will not consult with or provide copies of any bids or other confidential information to any Consultation Party that is an active bidder for the Assets. If, however, a member of the Committee submits a Qualified Bid for the Assets, the Committee will maintain its consultation rights as a Consultation Party; *provided*, that the Committee excludes the bidding Committee member from any discussions or deliberations regarding a transaction involving the Assets, and shall not provide any confidential information regarding the Assets or otherwise involving the Sale Process to the bidding Committee member.

## FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES

All rights, titles, and interests in and to the Royalty Assets subject thereto shall be sold free and clear of all liens, claims, interests, and encumbrances (collectively, the "Encumbrances"), subject only to the assumed liabilities and permitted encumbrances (as defined in the Successful Bidder(s)' asset purchase agreement), if any, in accordance with Bankruptcy Code §363(f), with such Encumbrances to attach to the net proceeds received by the Debtor from the Sale of the Royalty Assets in accordance with the Bankruptcy Code, applicable non-bankruptcy law and any prior orders of the Court.

## RESERVATION OF RIGHTS

The Debtor reserves the right to, in its reasonable business judgment (in consultation with the Consultation Parties), modify the Bidding Procedures in good faith, including, without limitation, the Sale Consummation Deadline and any other milestones thereunder, to further the goal of attaining the highest or otherwise best offer for the Royalty Assets, or impose, at or prior to selection of the Successful Bidder, additional customary terms and conditions on the Sale of the Royalty Assets, including, without limitation (a) extending the deadlines set forth in the Bidding Procedures, (b) adjourning the Auction (if held) without further notice, (c) adding or modifying procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction and/or adjourning the Sale Hearing in open court (if held), (d) canceling the Auction or electing not to hold an Auction, (e) rejecting any or all Bids or Qualified Bids, (f) adjusting the applicable Minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind basis," and (g) other than with respect to a Stalking Horse Agreement, selecting a draft purchase agreement agreed to by a Qualified Bidder in connection with a Qualified Bid to serve as the purchase agreement that will be executed by the Successful Bidder or Successful Bidders, as applicable, and with any necessary adjustments for the Royalty Assets and liabilities being purchased and assumed, upon conclusion of the Auction, if held.  The Debtor shall provide reasonable notice of any such modification to any Qualified Bidder, including a Stalking Horse Bidder.

## CONSENT TO JURISDICTION

All Interested Parties, Prospective Bidders, and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the Court for any and all matters related to, or in connection with, the Bidding Procedures, including, without limitation, any finding or determination that such Interested Parties, Prospective Bidders, and/or Qualified Bidders have waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of the Bidding Procedures, any credit bid, and/or the Bid Documents, as applicable.

## SALE HEARING

A hearing to consider approval of the sale of the Royalty Assets to the Successful Bidder(s), Backup Bidder(s) (if applicable), or to approve a Stalking Horse Agreement, if no Auction is held (the "Sale Hearing"), is currently scheduled to take place on **January 8, 2026 at p.m. (prevailing Eastern time)**, before The Honorable J. Kate Stickles. The Sale Hearing may be continued to a later date by the Debtor by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

At the Sale Hearing, the Successful Bidder(s) and the Backup Bidder(s) must acknowledge on the record at the start of the hearing that in connection with submitting their Bids, they did not engage in any collusion that would be subject to §363(n) of the Bankruptcy Code with respect to any Bids, the Auction or the Sale, specifying that they did not agree with any Interested Parties, Prospective Bidders, or Qualified Bidders to control the price or any other terms of the Sale.

Objections to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, any of the relief requested in the Motion, and entry of any order approving the sale (the "Sale Order") must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all orders of the Court entered in the Chapter 11 Case, (iii) be filed with the Court by **December 30, 2025 (prevailing Eastern time)** (the "Sale Objection Deadline"), and (iv) be served upon the Notice Parties and all other parties entitled to notice of same. Objections solely related to the identity to the identity of the Successful Bidder(s) (other than a Stalking Horse Bidder) or adequate assurance of future performance by the Successful Bidder(s), may be made at the Sale Hearing (the "Post-Auction Objection Deadline").

*    *    *    *    *

18

## Exhibit 2

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ALACHUA GOVERNMENT SERVICES, INC., | ) | Case No. 25-11289 (JKS) |
|  | ) |  |
| Debtor.[1] | ) |  |
|  | ) |  |

## NOTICE OF SALE OF DEBTOR'S ROYALTY ASSETS, BIDDING PROCEDURES, AUCTION, <u>SALE HEARING AND OTHER DEADLINES RELATED THERETO</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November [21], 2025, Alachua Government Services, Inc., as debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a motion [Docket No. ___] (the "**Motion**") seeking entry of (a) an order (the "**Bidding Procedures Order**") (i) approving bidding procedures (the "**Bidding Procedures**")[2] to be used in connection with a sale (a "**Sale Transaction**") of the Debtor's ownership of certain Vero cell lines and related intellectual property used in the development of a smallpox vaccines by a third party (the "**Royalty Assets**")[3]; (ii) authorizing the Debtor to designate a Stalking Horse Bidder (the "**Stalking Horse Bidder**") and provide Bid Protections in accordance with the Bidding Procedures and any Stalking Horse Agreement; (iii) scheduling (A) an auction of the Royalty Assets (the "**Auction**") on **January 5, 2026, at 10:00 a.m.(ET), if necessary,** and (B) a final hearing to consider approval of the proposed Sale Transaction (the "**Sale Hearing**") on **January 8, 2026, at [__] [_].m. (ET);** (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**") in connection with any Sale Transaction; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number is: Alachua Government Services, Inc. (5370). The Debtor's mailing address is 13200 NW Nano Court, Alachua, Florida 32615.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

[3] As more specifically described in the Motion, the Royalty Assets consist of royalty revenue derived from certain Vero cell lines owned by the Debtor used in the development of a smallpox vaccine pursuant to a license agreement with Emergent Biosolutions, Inc.

Contracts in connection with a Sale Transaction; and (vii) granting related relief; and (b) an order (the "**Sale Order**") (i) authorizing the Sale Transaction for a sale of the Royalty Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtor and any Successful Bidder (as defined in the Bidding Procedures), with liens to attach to the proceeds of the applicable Sale Transaction; (ii) authorizing the assumption and assignment of certain Contracts in connection with the approved Sale Transaction; and (iii) granting related relief.

On [_], 2025, the Court entered the Bidding Procedures Order [Docket No. [_]].

## ASSETS FOR SALE

The Debtor intends to sell the Royalty Assets.

A Prospective Bidder may bid on the Royalty Assets, subject to the conditions set forth in the Bidding Procedures.

The ability to undertake and consummate a sale of the Royalty Assets shall be subject to competitive bidding in accordance with the Bidding Procedures and approval by the Court.

Any party interested in submitting a bid for the Royalty Assets should contact the Debtor's investment banker, Jefferies LLC (Attn: Michael O'Hara, Kevin Murray (email: project.ace.2025.rx@jefferies.com) ("**Jefferies**")).

## KEY DATES AND DEADLINES

### A. Bid Deadline

Any Prospective Bidder that intends to participate in the Auction must submit in writing to Jefferies a Qualified Bid (as defined in the Bidding Procedures) on or before December 19, 2025, at 4:00 p.m. (ET) (the "**Bid Deadline**").

The Qualified Bid requirements are set forth in the Bidding Procedures.

### B. Auction

If one or more Qualified Bids is received by the Bid Deadline, the Debtor will conduct the Auction with respect to the Royalty Assets. If the Debtor does not receive any Qualified Bids (other than a Stalking Horse Bid), the Debtor will not conduct the Auction and will designate such Stalking Horse Agreement as the Successful Bid.

The Auction, if required, will be conducted on **January 5, 2026, at 10:00 a.m. (ET)**, at the office of Richards, Layton & Finger, P.A., located at One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, or such later date, time and location as designated by the Debtor (in consultation with the Consultation Parties). In the event that the Auction cannot be held at a physical location, the Auction will be conducted via a virtual meeting (either telephonic or via videoconference) the information to join which virtual meeting shall be provided by the Debtor to each Qualified Bidder prior to the Auction.

By **January 6, 2026**, the Debtor will file with the Court, serve on the Sale Notice Parties and cause to be published on the Debtor's case website, https://dm.epiq11.com/case/ags/ (the

"**Case Website**"), a notice of the results of the Auction (the "**Notice of Successful Bidder**"), which will (A) identify the Successful Bidder and the Backup Bidder; (B) either include a copy of each Successful Bid and the Backup Bid or a summary of the material terms of such bids, including any proposed assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing each Successful Bid and the Backup Bid free of charge from the Case Website; and (C) set forth the Post-Auction Sale Objection Deadline and the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

In the event the Auction is cancelled, including, without limitation, because no Qualified Bids, other than a Stalking Horse Agreement, have been received as of the Bid Deadline, the Debtor shall file a Notice of Successful Bidder promptly identifying such Stalking Horse Bidder as the Successful Bidder.

### C.  Objection Deadlines

1. <u>Sale Objection Deadline</u>. Objections to the sale of the Royalty Assets, including (i) any objection to a sale of the Royalty Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (ii) the entry of any Sale Order must (A) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (B) be filed with the Court by no later than **December 30, 2025, at 4:00 p.m. (ET)** and (C) served on the Objection Notice Parties (as defined in the Bidding Procedures).

2. <u>Post-Auction Objection Deadline</u>. Following service of the Notice of Successful Bidder, Sale Notice Parties will have an opportunity to object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in the Successful Bid (each such objection, a "Post-Auction Objection").  Any Post-Auction Sale Objection may be made at the Sale Hearing.

### D.  Sale Hearing

The Sale Hearing shall take place on **January 8, 2026, at [__] [_].m. (ET)** before The Honorable J. Kate Stickles, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## <u>RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES</u>

The Debtor reserves the right to, in its reasonable business judgment (in consultation with the Consultation Parties), modify the Bidding Procedures in good faith, including, without limitation, the Sale Consummation Deadline and any other milestones thereunder, to further the goal of attaining the highest or otherwise best offer for the Royalty Assets, or impose, at or prior to selection of the Successful Bidder, additional customary terms and conditions on the Sale of the Royalty Assets, including, without limitation (a) extending the deadlines set forth in the Bidding Procedures, (b) adjourning the Auction (if held) without further notice, (c) adding or modifying procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction and/or adjourning the Sale Hearing in open court (if held), (d) canceling the Auction

3

or electing not to hold an Auction, (e) rejecting any or all Bids or Qualified Bids, (f) adjusting the applicable Minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind basis," and (g) other than with respect to a Stalking Horse Agreement, selecting a draft purchase agreement agreed to by a Qualified Bidder in connection with a Qualified Bid to serve as the purchase agreement that will be executed by the Successful Bidder or Successful Bidders, as applicable, and with any necessary adjustments for the assets and liabilities being purchased and assumed, upon conclusion of the Auction, if held. The Debtor shall provide reasonable notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Case Website.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THIS CHAPTER 11 CASE MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF THE ROYALTY ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE TRANSACTION, INCLUDING THE SALE OF THE ROYALTY ASSETS TO A SUCCESSFUL BIDDER FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF A STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTOR.**

Dated:  [ ], 2025
      Wilmington, Delaware

Respectfully Submitted,

/s/ Draft
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Matthew P. Milana (No. 6681)
Clint M. Carlisle (No. 7313)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:          collins@rlf.com
                merchant@rlf.com
                steele@rlf.com
                milana@rlf.com
                carlisle@rlf.com
*Counsel for Debtor and Debtor in Possession*

5

**<u>Exhibit 3</u>**

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ALACHUA GOVERNMENT SERVICES, INC., | ) | Case No. 25-11289 (JKS) |
|  | ) |  |
| Debtor.[1] | ) |  |
|  | ) |  |

## NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE OF THE DEBTOR'S ROYALTY ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November [21], 2025, Alachua Government Services, Inc., as debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a motion [Docket No. ___] (the "**Motion**") seeking entry of (a) an order (the "**Bidding Procedures Order**") (i) approving bidding procedures (the "**Bidding Procedures**")[2] to be used in connection with a sale (a "**Sale Transaction**") of the Debtor's ownership of certain Vero cell lines and related intellectual property used in the development of a smallpox vaccine by a third party (the "**Royalty Assets**")[3]; (ii) authorizing the Debtor to designate a Stalking Horse Bidder (the "**Stalking Horse Bidder**") and provide Bid Protections in accordance with the Bidding Procedures and any Stalking Horse Agreement; (iii) scheduling (A) an auction of the Royalty Assets (the "**Auction**") on **January 5, 2026, at 10:00 a.m. (ET), if necessary,** and (B) a final hearing to consider approval of the proposed Sale Transaction (the "**Sale Hearing**") on **January 8, 2026, at [__] [_].m. (ET)**; (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**") in connection with any Sale Transaction; (vi)

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number is: Alachua Government Services, Inc. (5370). The Debtor's mailing address is 13200 NW Nano Court, Alachua, Florida 32615.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

[3] As more specifically described in the Motion, the Royalty Assets consist of royalty revenue derived from certain Vero cell lines owned by the Debtor used in the development of a smallpox vaccine pursuant to a license agreement with Emergent Biosolutions, Inc.

approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale Transaction; and (vii) granting related relief; and (b) an order (the "**Sale Order**") (i) authorizing the Sale Transaction for a sale of the Royalty Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtor and any Successful Bidder (as defined in the Bidding Procedures), with liens to attach to the proceeds of the applicable Sale Transaction; (ii) authorizing the assumption and assignment of certain Contracts in connection with the approved Sale Transaction; and (iii) granting related relief.

On [_], 2025, the Court entered the Bidding Procedures Order [Docket No. [_]].

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtor that may be assumed and assigned to the Successful Bidder for the Royalty Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtor may, in connection with the Sale Transaction with the Successful Bidder at the Auction, seek to assume and assign to the Successful Bidder certain of its Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with the Sale Transaction, together with the Debtor's calculation of Cure Costs with respect to such Contracts, is set forth on **Schedule 1** hereto. The inclusion of any Contract on **Schedule 1** does not constitute an admission by the Debtor, any Stalking Horse Bidder, any Successful Bidder, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. All rights of the Debtor with respect thereto are reserved.

In addition, to the extent that any of the Cure Costs set forth on **Schedule 1** do not reflect (i) postpetition payments that have been made by the Debtor in respect of applicable Cure Costs or (ii) any payments that are made by the Debtor in respect of such Cure Costs after the filing of this Notice, the respective amounts required to be paid to cure any existing defaults under the applicable Contracts shall be reduced by any such corresponding postpetition payments, and the Debtor reserves its rights to update the Cure Costs set forth on **Schedule 1** accordingly, either by filing a supplemental notice with the Court or by written notice to the applicable Counterparty.

## CURE OBJECTIONS

### A.    Cure Objection Deadline

Any Counterparty to a Contract that wishes to object to the Debtor's proposed Cure Costs (each such objection, a "**Cure Objection**") shall file with the Court and serve on the Objection Notice Parties its Cure Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by no later than **December 30, 2025, at 4:00 p.m. (ET)**.

**B.      Resolution of Cure Objections**

Pursuant to the Bidding Procedures Order, the Debtor, any Stalking Horse Bidder or Successful Bidder, and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph.  If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the applicable Sale Transaction, the Debtor, any Stalking Horse Bidder or, as applicable, the Successful Bidder may determine that any Contract subject to such resolved Cure Objection will no longer be assumed and assigned pursuant to the applicable Sale Transaction (subject to the terms of the applicable Sale Transaction).  All other objections to the proposed assumption and assignment of the Debtor's right, title and interest in, to and under a Contract will be heard at the Sale Hearing.

**C.      Adjourned Cure Objections**

If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing, or, at the Debtor's option, be adjourned to a subsequent hearing (each such Cure Objection, an "**Adjourned Cure Objection**").  An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction.  Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Bidder, and subject to the Debtor's rights set forth in paragraph 24 of the Bidding Procedures Order, be deemed assumed and assigned to the Successful Bidder as of the closing date of the Sale Transaction.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT. THE CURE COSTS SET FORTH ON <u>SCHEDULE 1</u> HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(b) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE DEEMED BOUND BY AND TO HAVE CONSENTED TO THE CURE COSTS.**

<u>**NOTICE OF AUCTION RESULTS**</u>

The Auction, if required, will be conducted on **January 5, 2026, at 10:00 a.m. (ET**), at the office of Richards, Layton & Finger, P.A., located at One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, or such later date, time and location as designated by the Debtor (in consultation with the Consultation Parties).  In the event that the Auction cannot be held at a physical location, the Auction will be conducted via a virtual meeting (either telephonic or via

videoconference) the information to join which virtual meeting shall be provided by the Debtor to each Qualified Bidder prior to the Auction.

By **January 6, 2026**, the Debtor will file with the Court, serve on the Sale Notice Parties and cause to be published on the Debtor's case website, https://dm.epiq11.com/case/ags/ (the "**Case Website**"), a notice of the results of the Auction (the "**Notice of Successful Bidder**"), which will (A) identify the Successful Bidder and the Backup Bidder; (B) either include a copy of each Successful Bid and the Backup Bid or a summary of the material terms of such bids, including any proposed assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing each Successful Bid and the Backup Bid free of charge from the Case Website; and (C) set forth the Post-Auction Sale Objection Deadline and the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

In the event the Auction is cancelled, including, without limitation, because no Qualified Bids, other than a Stalking Horse Agreement, have been received as of the Bid Deadline, the Debtor shall file a Notice of Successful Bidder promptly identifying such Stalking Horse Bidder as the Successful Bidder.

## ADEQUATE ASSURANCE OBJECTIONS

### A.    Adequate Assurance Objection Deadline

Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is a Successful Bidder's (or any other relevant assignee's) proposed form of adequate assurance of future performance (each such objection, an "**Adequate Assurance Objection**"), may raise such Adequate Assurance Objection at the Sale Hearing.

**IF A COUNTERPARTY FAILS RAISE AN ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE. THE SUCCESSFUL BIDDER (OR ANY OTHER RELEVANT ASSIGNEE) SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.**

## SALE HEARING

The Sale Hearing shall take place on **January 8, 2026, at [__] [_].m. (ET)** before The Honorable J. Kate Stickles, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Case Website.

*[Remainder of Page Intentionally Left Blank]*

5

Dated:  [ ], 2025
     Wilmington, Delaware

Respectfully Submitted,

*/s/ Draft*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Matthew P. Milana (No. 6681)
Clint M. Carlisle (No. 7313)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
      merchant@rlf.com
      steele@rlf.com
      milana@rlf.com
      carlisle@rlf.com

*Counsel for Debtor and Debtor in Possession*

6

## Schedule 1